This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Robert D. McLaren and Justice Catherine E. Zienoff. The case is No. 2-19-1024, Wilmington Savings Fund Society, Plaintiff-Appellee v. Thomas P. Cahill, et al., Defendants' Appellants. Arguing for the Appellants, George H. Olson. Arguing for the Appellee, Nathan Bukama. Good morning, are both parties ready to proceed? Yes, Your Honor. Yes, Your Honor. Before we begin, did both parties receive our September 23rd order regarding issues we'd like the parties to address? Mr. Olson? Yes, Your Honor. Mr. Bukama? You both received it. Also, you need not address the Appellee's motion to strike the Appellant's Brief and dismiss the appeal as we have denied that motion. Mr. Olson, you may proceed. Thank you, Your Honor. May it please the Court, George H. Olson on behalf of Defendants Thomas Cahill and Bridget Lemme. Your Honors, this is a residential foreclosure case. There were two foreclosures. The initial case was dismissed, a new case was filed, the case went to trial, and after the trial, there was a dismissal for want of prosecution, followed by reinstatement at the Court's order on the Plaintiff's motion. After reinstatement, the case went to foreclosure sale, confirmation was heard and entered. The case centers, quite frankly, on the face-to-face meeting requirement in the HUD regulations under 24 CFR 203.604. The relief that we're requesting on appeal is to vacate the final order approving sale and personal deficiency and to remand the case with instructions to dismiss the case. Now, we've raised on appeal two issues. First, that the trial court erred by granting reinstatement of the case after the DWP under Section 13217 and 2-1005 violated the more than two-time filing rule as articulated in Timberlake v. Illini Hospital. I will, for the purposes of this argument, however, concede that in the Plaintiff's briefs, they've made the better argument. However, the second issue is that the trial court erred in ruling on the exception of the face-to-face meeting requirement, again, under Section 24 CFR 203.604. Here, in this case, we're dealing with the absolute requirement that there be a face-to-face meeting. And when we look at Section 203.604B, it starts off with the first party's obligation, my throughout both of those foreclosure cases, that if a default occurs in a repayment plan arranged other than during a personal interview, then the mortgagee must have a face-to-face meeting. In this case, it's clear and Plaintiff has acknowledged and admitted that there was a default occurred during that modification plan. In fact, the Plaintiff points out that it occurred five months after it was entered into. That then, in our argument, shifts the burden on reliance on the exceptions to the Plaintiff, where the exceptions are set forth in Section 203.604, and there's five possible exceptions in the alternative, any one of which would obviate the need for a face-to-face meeting. In our view, the trial court erred by mistakenly referring to exception number four, which states that there no face-to-face meeting is required if a repayment plan consistent with the mortgagor circumstances is entered into to bring the mortgagee's account current and the payments are current. Well, it's evident that the payments were not current. That exception could not apply. The only exception that arguably Plaintiff could rely upon would be exception number C-2, where the mortgage property is not within 200 miles of the branch office, and Plaintiff did not present any evidence in meeting its burden to prove that there was no branch office or office of the Plaintiff within more than 200 miles from the mortgagee's address. The argument is, frankly, very straightforward. It all looks to the notion of whether or not this condition preceding to the foreclosure has been satisfied as set forth in section 203.604, and it's clear that the burden of proof shifts to the Plaintiff to prove the exceptions to a statutory requirement. I have nothing further. I have to unmute myself. Just one second, please. Council, with regard to shifting of the burden, what authority can you give us that would support that position, that the burden shifts to the Plaintiff to prove the exceptions to the statutory requirement? The primary authority, actually, I think the U.S. Supreme Court case... Let me pull this slide here. As it turns out, and I appreciate the court's question, because it's something that I did not address in the brief or the reply brief, but the burden of proving exceptions to a statutory requirement is something that, apparently, has taken quite a bit of legal analysis over time. The touchstone that I came up with is Schaefer v. Wiest, W-E-A-S-T, U.S. Supreme Court. Justice O'Connor, in that case, which I can give you the site here shortly, clearly sets out that when the party establishes that there's a statutory requirement, that it shifts the burden to the party who is relying upon the exceptions to take it out of that clear requirement, in this case, to have a face-to-face meeting. All right. Well, we'll wait until you get the... If you can give us the site, I'll go on with a comment. Let me... Testimony was sufficient to prove that GMAC had a branch office or service center, which is, I believe, statutory language as well, right? GMAC service center within 200 miles, if we look at it that way? Well, Your Honor, if the burden of proof has shifted to the plaintiff, and the plaintiff has not demonstrated or produced any evidence of any kind, then while I will concede Lemmy's testimony isn't the strongest, it's not necessary because the plaintiff hasn't met their burden. Well, let's assume the burden hasn't shifted. So while you say it's not the strongest, but does that testimony have to include that the person went inside and saw what business was transacted? What do they need to show, that there's some sign outside? I mean, what are the requirements? Well, I think the basic requirement was satisfied by establishing that she went to an office that was posted with a sign. It's incumbent upon the plaintiff to provide evidence that that office didn't exist. I mean, she's taken a step forward and shown that there's a sign. I think it's incumbent upon a plaintiff to, if they're going to cavalierly a sign behind, people in the public could reasonably rely on the fact that that's where an office is. And I don't think she needs to go beyond that. But, and that is notwithstanding the fact that this information regarding no face-to-face meeting was included in an affirmative defense. We start with the fact that this was all propounded in the defendant's affirmative defense, correct? That's correct. And so obviously the burden in affirmative defense is on the party propounding the affirmative defense, correct? That's correct. Although consistently in their pleadings, the defendants maintained that this was a condition preceding to the filing of the complaint in the first instance. So, you know, I can't change the way the defendants pleaded initially. Okay. How could the defendants be prejudiced by the absence of a face-to-face meeting if the modification, if there could be no other modification agreement? In other words, there was one, they were in the middle of that term. So how could they be prejudiced by the absence of this face-to-face meeting? Well, you know, I hesitate to argue based on speculation, but the, before I speculate, I think the real answer to that is that in the second district's case of U.S. National Association versus Hernandez, 217 ILAP second, 16850, dealing with the same provision, but a different set of facts. On the issue of prejudice, I believe the court has said that that's not something that's in the statute and that the court is reluctant to graft an additional condition that's not specifically set forth in a carefully drafted, in this instance, regulation. Now to speculate, it's certainly an entirely possible that on a face-to-face meeting, which would have been the very first face-to-face meeting they ever had, they never had a face-to-face meeting even when they got the original modification, they could have worked out some kind of a payment arrangement and it didn't necessarily have to be, or in the form, excuse me, of a forbearance or even a structured payment plan, which I don't know that it's in the record quite frankly, but it was not without, it wasn't beyond the ken of possibility since the defendants had come through their financial difficulties. Well, when you say speculation, I mean, the plaintiffs do argue in their brief that there would be no prejudice. So, I mean, assuming that, well, that's part of their argument. So, I was asking really what you're anticipating that that's what they would be arguing, what your response to that would be. So, you're suggesting that there may have been other options other than a loan modification that would be available, is that correct? Yes. And were they specifically loss mitigation options? Well, in the general description of loss mitigation, that certainly a forbearance or a payment plan, servicers routinely refer to loss mitigation options, including all of those. And were they, if we were to review the mortgage letter, part of the record here in its entirety, were there provisions for loss mitigation options in that mortgage letter, both informal, formal and special forbearances? I'm sorry, I don't recall, Your Honor. Well, my reading is there were. However, do you know if the record shows or demonstrates whether the defendants would have qualified for any of these loss mitigation options? I think you said to me that that might have been possible. You just argued that. But do you know if the record reflects that? What in the record reflects what you just argued? Well, that's why I couched it carefully in terms of speculation. I don't believe there's anything in the record that shows specifically that they would qualify for a forbearance or payment plan. I see. Notwithstanding the fact that that those provisions may have been in the mortgage letter. That's right. Correct. Okay. I don't have any other questions. Right. Well, give me one second, please. Just a minute. I don't have any further questions right now. Thank you. Thank you, Justice Enoff. Justice McLaren, your questions? At least one. Counsel, have you ever heard of the principle relating to race? Yes, Your Honor. And do you recall what the basic premise of the reason why usually the plaintiff is not given the burden of going forward or at least not the burden of proof and that it is placed upon the defendant to establish the status of the factual scenario or burden of persuasion? The burden of proof encompasses both burden of persuasion and burden of moving forward. And I think in this instance here, the burden of moving forward is on the plaintiff to show that the statutory exemptions, one of the statutory exemptions applied. You understand that normally rules of evidence place the burden of proof upon the party who is supposed to establish an affirmative fact because very often a negative fact is very difficult, if not impossible to prove? Yes. Does that have any effect on your argument today? No. So it's your contention that your burden to prove that there is no GMAC office within 200 miles is more easily proven than if the plaintiff had established that there was one down the street half a mile away from the address? No, my position is that plaintiff failed to do that. And my point is, if he had done it, would it have been easier to prove that than for you to prove that within 200 miles of a radius of your property, there was not a GMAC building? That's correct. I have no further questions. Thank you, Justice McClure. Mr. Olson, doesn't common sense dictate that the branch office that Ms. Lemme referred to provides mortgage service in order to qualify as a defense under the section 604C2? I'm not sure I understand your question. Are you asking whether that office had the facility to negotiate? All she described is a, we don't even know what kind of a building it was, that all she said was there was a sign and she did not go inside, correct? That's correct, Your Honor. And would you agree that the obligation to raise the defense would, in order to suffice until it's contradicted or overcome by other evidence, would you agree with that? I would have to agree with that. That's the Premum Fascia case, correct? Correct, Your Honor. And are you familiar with Banker's Life Company v. Denton, the 1983 case? Not intimately, no, Your Honor. That case is directly on point. It is an affirmative defense. 604 can be raised as an affirmative defense, but it's the obligation of the defendant to establish all the elements, at least initially, to shift the burden to the bank. And your position is you've met that burden, correct? That's correct. Now, Mr. Cahill is an attorney, correct? Yes, Your Honor. And we can take judicial notice of the ARDC website that he's an assistant state's attorney in McHenry County? Yes, Your Honor. So he knows how to try a case? Yes, and he did try the case. Are you familiar with the recent Fourth Circuit case, Stapp v. U.S. Bank and Trust, 956F3-266, where the Fourth Circuit said, we do not think the text of Section 203-604-C2 can be read to encompass an office at which no mortgage-related business is conducted. Did you refresh your mind? I did, but I did not focus on that case. And it's clear that that case speaks to the, if you will, weakness of the testimony of Mrs. Lemming. And that's what the affilee is arguing here, that Mrs. Lemming's testimony is insufficient to shift the burden to the plaintiff, correct? Correct. That's all I have. You'll have time for rebuttal. Mr. Buchman. Thank you, Your Honor. May it please the court, Nathan Buchman on behalf of the plaintiff. Here, plaintiff proved its prima facie foreclosure case, namely plaintiff established the existence of a note mortgage, the existence of a default and its damages without any substantive objection from the defendants. Defendants raised two issues to try to defeat plaintiff's uncontested proofs. One, that plaintiff's cause of action was barred by the single refiling rule. And two, that plaintiff's cause of action was barred by its failure to conduct or make a reasonable effort to conduct a face-to-face meeting before this foreclosure action was filed. Since Mr. Olson has essentially conceded the argument regarding the single refiling rule, I'll begin with discussing the burden of proof. The case that Mr. Olson cited, Schaefer v. Wiest, involved the Supreme Court's interpretation of the Individuals with Disabilities in Education Act. That site is 546 U.S. 49. In doing my research for this argument, I did not come across any directly on-point discussion of the burden of proof as it relates to the regulation at issue 24 CFR 203604. But as your honors mentioned, failure to comply with HUD regulations prior to a foreclosure is an affirmative defense, as was initially adopted in Bankers Life Company v. Denton. So therefore, I think this court should take the default position that the party raising that affirmative defense bears the initial burden of proving a prima facie case before any burden shifts on the plaintiff to rebut any of those elements that have been shown by defendants. This position is tangentially supported in Melvin Mortgage Corporation v. Larios, 1998 Westlaw 292387, in which the District Court in the Northern District of Illinois denied a foreclosing bank's motion to strike a defendant's face-to-face defense because the defendant had pled that a bank branch was located within 200 miles of the property. Here, Ms. Lemme simply failed to carry that burden of proof. All Ms. Lemme testified to was that there was a sign outside of a building in Schaumburg in 2013. Under the face-to-face regulation and as established by plaintiff's uncontradicted proofs, defendants defaulted on their modification on September 1, 2012. Therefore, the relevant time period to determine when a face-to-face meeting would have been required or a reasonable effort to conduct one would have been triggered is September through December of 2012. Driving by a building and observing a sign in 2013 has no probative value as to GMAC Mortgage's obligations in September through December of 2012. Similarly, seeing a sign outside of a building does not establish that this was a branch office under the HUD regulation. As Your Honor mentioned in Step versus Wells Fargo, the Fourth District Appellate Court recently, Federal Appellate Court rather, recently explained that in the context of conducts mortgage business. Again, Ms. Lemme testified she didn't go inside the building. All she did was drove by and saw a sign. She did not conduct any further investigation because she did not think that she had any business to go inside of the building. Ms. Lemme's testimony about the lack of further investigation and her lack of having business to go inside the purported office of GMAC Mortgage shows the defendant's attitude that they were not prejudiced by the lack of a face-to-face meeting because they did not attempt to engage in any sort of loss mitigation. The record shows that even if they had attempted to engage in loss mitigation, there was no possibility of reaching a settlement that allowed the defendants to retain this home. As this court initially applied the No Prejudice Principle in PNC Bank v. Wilson, as cited in our brief, the No Prejudice Principle was applied to a situation where the borrower had obtained a discharge of his obligations under a Chapter 7 bankruptcy. In applying the No Prejudice Principle, this court reasoned that the HUD regulations contemplate the existence of a loan default to ameliorate, and the effect of the discharge essentially removed the liability or effect of that loan to ameliorate. Although this court declined to extend the No Prejudice Principle in U.S. Bank v. Hernandez, that wasn't a bright-line denial. It wasn't the court saying, under no circumstance will we ever extend the No Prejudice Principle. Rather, it was specific to that case because the plaintiff had only argued that the defendant's history of delinquency made a foreclosure inevitable, and because the plaintiff did not present the court with any direction from a district court showing that the No Prejudice Principle could be applied to the face-to-face meeting. As explained in our brief, in Campbell v. Wells Fargo Bank, the District Court for the Northern District of Georgia agreed that a borrower's damages were not caused by the lack of face-to-face meeting because a face-to-face meeting would not have resulted in a modification where the mortgagee was barred by HUD regulations from offering a face-to-face meeting. Here, the record does show that defendants could not have obtained any sort of settlement or retention agreement if a face-to-face meeting had occurred. In Mortgagee Letter 09-23, HUD directs its servicing agents to review borrower's loss mitigation in a very particular order. It's first review for FHA special forbearance, then a loan modification, then a partial claim, and then an FHA HAMP modification. Here, in March 2012, the defendants received the FHA HAMP modification, which by virtue of the fact that that is the type of modification that they received, it can be inferred that they did not receive any sort of settlement or retention agreement. Defendants did not put on any evidence to suggest, as Mr. Olson alluded to, that they were experiencing some sort of temporary hardship when they defaulted on their modification five months after receiving it. In fact, defendants had multiple opportunities to present such evidence and simply failed to do so. Plaintiff filed two loss mitigation affidavits in which its representatives averred to multiple attempts at outreach that were unsuccessful because defendants did not respond. And at trial, plaintiff's representative testified to settlement options that were made in March and August of 2018. Again, Ms. Lemme or Mr. Kahle did not present evidence or argument to rebut those affidavits or the testimony that was offered at trial. So, there was simply nothing that could have been done. Defendants didn't engage in any attempted outreach. And frankly, even had they engaged in the attempted outreach, there's nothing that could have been offered because defendants only qualified for FHA HAMP modification when they were reviewed in March of 2012. And there was no change in circumstances alleged or suggested by the defendants during the litigation. So, I think they would, that is, this court can infer that they would not have qualified for any of the other modification or forbearance options. And under the FHA HAMP guidelines, as was modified under the mortgagee letter 09-23, a party couldn't receive a subsequent FHA HAMP modification at any time. And then as modified by mortgagee letter 12-22, that timeline was cut from any time to 24 months, which would still bar the defendants from receiving a subsequent modification. And I have nothing further to add, Your Honor. Thank you. Justice Enoff, your questions. Thank you. Counsel, with respect to who has the burden regarding the exceptions under 203.604, is it your position that the plaintiff would never have the burden of proving the exceptions or just didn't have the burden here under these facts? I think under these facts and this procedural posture, the plaintiff didn't bear the burden. If we were examining this in the context of a summary judgment motion, for example, plaintiff would have the burden, you know, and plaintiff wanted to assert one of the exceptions, then yes, plaintiff would bear the burden. Similarly, had defendants made a prima facie showing, for example, had Ms. Lemme testified that when she drove by this office and saw the mortgage sign, she got out of her car, went inside, spoke to a representative who indicated that, yes, we do mortgage work here. I think in that situation, then the burden would have shifted on the plaintiff to provide some proof to discredit Ms. Lemme's testimony or to contradict Ms. Lemme's testimony. But in this situation, defendants did not do enough to switch that to require that burden to be shifted. Okay, I understand. Wouldn't the plaintiff, however, been in the best position to prove the absence of an office as opposed to the defendants proving the existence of one? Not necessarily, Your Honor. The relevant time here is 2012. GMAC Mortgage was a national banking institution. Presumably, defendants were able to go on their website and search for branch offices. So it's not some mystery that can only be discovered by plaintiff. I mean, defendants testified that they did find this office, but they didn't present evidence or take the necessary steps to show that this was, in fact, a branch office. Okay. You articulated reasons why loss mitigation steps would not have been available to the defendants in this case. You argued that. Does the record affirmatively show that as to whether or not they would have the ones that you mentioned? Well, yes, Your Honor. It shows sort of by omission. In March of 2012, the modification is clearly a FHA HAMP modification. So if you look at what the review process, I believe it's referred to as a waterfall review where you started the first one and work your way down. If the defendants qualify for anything in the chain, then that ends the process right there. By virtue of the fact that defendant's initial qualification was for FHA HAMP modification and the fact that there was no evidence, testimony, even argument from where there's a verifiable loss of income, there was no testimony or argument, anything from the defendants to show that their default was caused by a loss of income or any sort of change in circumstances. So this court... But wouldn't it have occurred during a face-to-face meeting? I mean... I'm sorry. What was that, Your Honor? If there had been a face-to-face meeting, wouldn't that have been the place or time that that information would have come to light? If... Had they... There had been... Hello? I'm sorry. Yeah, here. Did you... I'm sorry. Did I cut out? A little bit, yes. Okay. Wouldn't the information regarding their financial situation have come out during a face-to-face meeting? That would have been the place that this information would have been... would have come to light. I agree that the information regarding the defendant's financial situation would have come to light in a face-to-face meeting. However, in reviewing this in the context of application of the no prejudice principle, as this court explained in U.S. Bank v. Hernandez, the defendants have to show some sort of prejudice, whether it's just an allegation that they could have qualified, something. Defendants had multiple opportunities to explain their situation, explain the reason for the default, and they didn't do so during the course of this litigation, whether in the pre-trial motion practice or at trial. Okay, thank you. I don't have any other questions at this time. Thank you, Justice Enoff. Justice McClaren, your questions? Yes, thank you. Mr. Bukamuk, could your with an affidavit signed by or executed by someone who's in charge of lease or real estate holdings? They could have established whether or not an office was there, but I don't think that would have gone to the ultimate question of whether it was a branch office, as explained in Step v. Wells Fargo, where it's open to the public and conducts mortgage business. Leasing agents affidavit would simply have said, yeah, they rented space there, and I don't think that they would have known, you know, the nature of it, whether they opened the office to the public, and they certainly would not have known what type of business is conducted there. Is it accurate or at least reasonable to say that the distance requirement or qualification is an exception to an exception? Or is it an exception to a requirement? I think it is an exception to the requirement. I mean, the way I do it, I think it could be both, because you could have an office within 200 miles, but it's not open to the public and does not conduct mortgage-related business, or there simply isn't an office within 200 miles. But I think as sort of a threshold matter for whether or not the face-to-face meeting applies, I think it is an exception to the general requirement. Who has to raise the general requirement of a face-to-face meeting? That is an affirmative defense that the defendants bear the burden of at least presenting a prima saying we have an FHA loan, we should get a face-to-face meeting. And I believe you have already argued that there was no prejudice. Is that correct? Did the trial court make any findings relative to lack of prejudice? The trial court did not make any specific findings. I think if sort of inferring from the judge's decision, or rather, Judge Bronis' ruling following trial, it seemed that he was inferring that there was a lack of prejudice based on defendants' declaration in their modification agreement that they lacked sufficient liquid assets to make their mortgage payments now and in the future. And then within five months of receiving this agreement on modified terms, they failed to make their mortgage payments. So I think it could be inferred, but it was not a direct finding, no. I have no further questions. Thank you, Justice McLaren. Mr. Buchanan, the step case, you keep saying Wells Fargo. Are you referring to Step versus U.S. Bank Trust National Association, the case that I refer to, or is it a different step case? Is that 956 F3D? That is my apologies, Judge. Either party cited that, but it's a recent case, and should we look to the Federal Circuit Court's interpretation of the regulation? I think, especially in this situation where there isn't any sort of direct conflict with the Seventh Circuit, you can look at the federal courts from outside other jurisdictions for guidance, yes. That's all I have. Thank you. Mr. Olson, rebuttal. Yes, I only have one comment. The discussion concerning the ability of the plaintiff to establish that they did not have an office within 200 miles of the mortgagee reminds me that in this initial case, in the initial foreclosure case, the defendants filed and served requests to admit concerning that very issue. The court admonished the plaintiff to come up with the evidence that they did not have an office within 200 miles. In lieu of proceeding with that response to the court's direction, they voluntarily dismissed the case. Again, I emphasize that the burden was on the plaintiff to establish that, and as pointed out by the justice, it could well have done so and had the ability within its own corporate organization to provide an affidavit that would have established that. I have nothing further. Justice Zinoff, any questions? No, I don't have any. Justice McLaren, any questions? Justice McLaren, you are muted. Justice McLaren? Yes, I'm sorry. No, I don't have any further questions. Just this question. Mr. Olson, you just made reference to the request to admit, but that was under the prior pleading, correct? That's correct, Your Honor. Yes, and in this case, your client, Mr. Gahill, accepted the responsibility to go forward with the affirmative defense, correct? Yes, Your Honor. All right, that's all I have. The court thanks both parties for the quality of your arguments today. I would remind the parties that to always refresh your research before oral argument. The case will be taken under advisement. A written decision will be issued in due course, and I will initiate our conference. Thank you. Have a great day. Thank you, Your Honors. Thank you.